WRIGHT, Presiding Judge.
This case concerns the custody of a child.
Darrin Vosyka, a victim of cerebral palsy and severe mental and physical handicaps, was born in July 1968. In August 1968, legal custody of Darrin was vested in the State of Alabama Department of Pensions and Security (DPS).
Wendell Webb, an unmarried man, applied to adopt a child through DPS. In October 1981, Darrin was placed with Webb for visitation. In December 1981, a “Long-Term Foster Care Agreement” between Webb amd DPS was executed, wherein it was agreed that Webb would be Darrin’s primary parent until he reached adulthood. Webb also agreed that he would not ask for Darrin to be removed unless serious or unusual circumstances existed. Added to the agreement was a handwritten provision giving Webb the right to adopt Darrin at any time until age twenty-one years. Legal custody of Darrin was to remain in DPS. DPS agreed that it would not disrupt this placement except for reasons which would serve the best interest of the child.
Darrin resided at the Webb home from October 1981 until January 20, 1984, when DPS removed him. An investigation of three child abuse/neglect reports did not substantiate abuse, but it did raise concern about the care and protection given Darrin in the Webb home.
While Webb provided foster care, Darrin received a great deal of time and attention. Webb adapted a walker for Darrin which provided him greater mobility. But there was evidence that Webb failed to follow the recommendations of qualified professionals regarding the care and treatment of a child with Darrin’s handicaps.
Apparently Webb had expectations that Darrin might be able to walk unaided and talk clearly. The school speech pathologist recommended that Darrin use an electronic communicating device, but Webb insisted *423 that he be placed in a total oral communication program. The physical therapist from Crippled Children’s Services recommended that Darrin be restrained in his chair. Evidence indicated that Webb did not follow this recommendation and Darrin fell and hit his face on the table several times. It was also recommended that Darrin’s chair have side arms and that a railing be placed on the toilet to prevent him from falling into the bowl. There was evidence that these recommendations were not followed, and Darrin would fall into the toilet bowl.
Darrin was removed from Webb’s home and placed at Pineview Manor in Montgomery. Pineview is a residential facility which can provide the physical care and supervision which Darrin needs. He remains at this facility.
Webb is involved in litigation of this matter in several different courts. After Darrin was removed, Webb requested a hearing with DPS. The hearing panel found that the removal was in Darrin’s best interest. Webb appealed that finding to Montgomery Circuit Court, which transferred the case to the Domestic Relations Division. Webb also filed an action pursuant to 42 U.S.C. § 1983, claiming deprivation of federally guaranteed rights under color of state law. This action was filed in federal district court and is still pending at this time.
In this case, Webb filed a petition in March 1985, with the Juvenile Division of the Montgomery Circuit Court. In his petition, Webb alleged that Darrin is a dependent child and is receiving improper and insufficient care while in the custody of DPS so as to endanger his health and general welfare. Webb also alleged that Darrin had lost his strength and ability to walk and had regressed to the point of being confined to a wheelchair. Webb contended that conditions were such that custody should be taken from DPS.
A hearing was set for May 1, 1985, but a motion for continuance made by DPS was granted. On May 8,1985, the Montgomery Juvenile Court issued an order continuing the case until the case before the domestic relations court involving the same parties was heard and the juvenile court had reviewed that transcript. Both Webb and DPS were granted the right to have Darrin examined and/or tested with prior court approval required.
On October 29, 1985, the court set the hearing for November 12, 1985. Webb’s attorney filed a motion for a continuance, which was denied. At the hearing, Webb’s attorney once again moved for a continuance. She stated that the deposition of Belyn Chambliss, which was taken on November 8, revealed additional witnesses who could not be subpoenaed in time for the hearing. Chambliss is responsible for supervising Darrin’s foster care placement. The motion was once again denied. In its opening remarks at the hearing, the court stated that this was an unusual case in that DPS was alleged to be neglecting a child and that Webb had the burden of proving that Darrin was presently being neglected.
At the close of the evidence presented by Webb, the court granted the motion to dismiss made by DPS. Webb appealed to this court.
In his first issue, Webb contends that the trial court erred when it denied his motion for continuance. He contends that there was insufficient time to prepare for trial and subpoena witnesses after receiving the October 29 order setting November 12 as the hearing date.
Continuances are not favored. Selby v. Money, 403 So.2d 218 (Ala.1981). It is within the discretion of the trial court to grant or deny a motion for a continuance. The exercise of that discretion will not be disturbed on appeal, except for palpable abuse. Scott Paper Co. v. Griffin, 409 So.2d 1375 (Ala.1982). In Ex parte Driver, 258 Ala. 233, 62 So.2d 241 (1952), the court listed certain guidelines for determining whether a continuance is warranted by the absence of a certain witness or evidence. These guidelines included:
“(1) that the expected evidence will be material and competent; (2) a probability that the testimony can be obtained at a *424 future date to which the cause may be continued or postponed; (3) due diligence having been exercised by the movant to secure the absent witness or evidence; (4) the expected evidence must be credible and will probably affect the result (5) the evidence must not be merely cumulative or impeaching; (6) that the motion for continuance is not made merely for purposes of delay.”
In this case, the court had issued an order in May 1985, which allowed Webb to begin preparing for the hearing by obtaining expert witnesses and examining and testing the child. But the deposition of Belyn Chambliss was not taken until the Friday before the hearing on Tuesday, November 12. We find no abuse of discretion in denying the motion for continuance.
In his second issue, Webb contends that the trial court erred in granting the motion to dismiss made by DPS. In its order granting the motion, the court stated that Webb had failed to prove his allegations that Darrin was presently being neglected and that a change of custody was warranted.
This case, as stated by the trial court, began in a novel manner. A child, already under the jurisdiction of the juvenile court by a.previous order of dependency, is again alleged dependent while in the custody of a state agency — DPS. Though the welfare and best interest of a child may be brought to the attention of the court at any time by proper petition, Webb chose the method of alleging dependency under the Juvenile Code. In so choosing, he assumed the burden of proving such dependency by clear and convincing evidence. After hearing his evidence, the court found that Webb had failed to carry his burden of proof. We find the trial court was not in error. There was thus no basis for hearing evidence as to the disposition of custody.
In a non-jury trial, the judge is the trier of fact and weighs the evidence and the credibility of the witnesses in reaching his decision. Peterson v. Jefferson County, 372 So.2d 839 (Ala.1979). When the trial court rules on a motion to dismiss, it is presumed that their determination is correct. The court’s determination will not be reversed if it is supported by credible evidence and if it is not palpably erroneous. Feaster v. American Liberty Insurance Co., 410 So.2d 399 (Ala.1982).
In this case, Webb contends that DPS has neglected Darrin to such an extent that he is wheelchair-bound, and that his health and general welfare are endangered. Several of the witnesses knew very little about the actual care of Darrin since January 20, 1984, when he was removed from the Webb home. There was testimony from Dr. James Harris Armstrong, Jr., as to the surgery he performed on Darrin in January 1985, to correct some spasticity in his arm. After surgery Darrin progressed from a cast to a full-time splint to a part-time splint, which affected his ability to use a walker for ambulation, but did not prevent him from ambulating. There was testimony to indicate that Darrin has been walking with a walker since his surgery.
There was also testimony as to Darrin’s daily routine and the activities in which he participates — including Camp ASCCA, physical therapy at Madison Park School, and Halloween and Christmas parties.
Darrin testified at the hearing. He stated that he did not wish to live with Webb. He wished to remain at Pineview and go to school at Madison Park.
There was ample evidence to support the trial court’s grant of the motion to dismiss.
This case is due to be and is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.