THOMAS, Judge.
Percy Marsh (“the father”) appeals from a judgment of the Mobile Circuit Court denying his request for a modification of custody. The father and Heather Marsh Smith (“the mother”) were divorced in July 2005; the divorce judgment awarded the parties joint custody of the parties’ daughter (“the child”), with the parents having alternating weeklong custodial periods. The joint custodial arrangement functioned well until the mother remarried and decided to move from Mobile County, where both parents had resided after the divorce, to Lucedale, Mississippi.
The mother informed the father of her intent to relocate via conversations regarding the matter, but she failed to serve the father with the appropriate written notice containing the information required by Ala.Code 1975, § 30-3-165, a part of the Alabama Parent-Child Relationship Protection Act (“the Act”), codified at Ala. Code 1975, § 30-3-160 et seq. The father then filed in the trial court a petition to hold the mother in contempt for failing to properly provide notice of her relocation; in his motion, he requested temporary custody of the child until the mother returned to Mobile County.
In response to the father’s petition, the mother counterpetitioned for a modification of custody, seeking sole custody of the child. The father then counterpetitioned for a modification, seeking sole custody of the child as well.
The father sought emergency temporary custody of the child in March 2008 based on the mother’s endangering the safety of the child by giving the child an overdose of a prescription medication. The mother opposed the father’s motion, alleging that her mistake in giving the child too much of the medication was inadvertent and that the issue had been promptly and properly han- *102 died by the mother. However, after a hearing, the parties agreed to place the child in the temporary sole physical custody of the father and for the mother to have visitation from Thursday afternoon to Sunday evening on alternating weekends.
At the trial in November 2008, the mother admitted that she had relocated to Lucedale, Mississippi, where she resided with her current husband. She explained that they lived next door to her current husband’s parents, Marion and Bobbi Smith (collectively referred to as “the Smiths”), and that the child spends time with them and her current husband’s grandchildren, who also live nearby, when the child is in Mississippi. The mother further explained that she had begun exercising her custodial or visitation periods in Mobile County when the father and the guardian ad litem had objected to her relocation to Mississippi; she said that the Smiths had allowed her to use their residence in Chickasaw during her custodial or visitation periods. According to the mother, she and the child slept in the same bed during the mother’s custodial or visitation periods and the mother’s current husband slept on the couch in the Chickasaw house. During the litigation, the mother objected to the father’s practice of allowing the child to sleep with him during his custodial periods. As noted below, the father discontinued this practice when the mother made an issue of it. The mother also complained that the father had not taken the child to the doctor even after the divorce and had relied on her to do so; the father explained that he drove a truck to and from New Orleans twice per day during that period and that he was not available to pick up the child from day care to take her to the doctor’s office. Otherwise, the mother had no real complaints about the father’s parenting.
The father testified that the child had slept in his bed with him when he had custody of her. He explained that he had discontinued that practice when the mother had objected to that practice, citing its “inappropriateness.” The father denied that having the daughter, who was six at the time of trial, sleep in his bed was inappropriate. According to the father, the child enjoyed being with both of her parents; the father said that he would have expected the child to feel this way. The father also said that he felt that the mother was selfish and that she could be a better mother if she would put the needs of the child first. The father focused on the mother’s inadvertent overdosing of the child as evidence that her parenting skills were lackluster.
Regarding the overdosing incident, the mother testified that the child had had an allergic reaction of some kind during the time she was taking an antibiotic for an upper respiratory infection. When the hives the child suffered from did not resolve overnight after the mother had administered a dose of the over-the-counter medication Benadryl, the mother took the child to the emergency room, where the physician on duty prescribed a steroid medication. The mother said that she inadvertently gave the child the steroid medication on the antibiotic dosing schedule; that is, she gave the child a dose of the steroid each time the child was to receive a dose of the antibiotic, which was more frequently than the dose of the steroid was to be administered. When the mother realized her mistake, she said she took the child to the emergency room at once. Once the child was seen at the emergency room, the child was found to have suffered no severe ill effects. The mother said she was told that the child could have had a more severe reaction to the overdose but that she had not. The mother also said that she was told to wean the child off of *103 the steroid medication because stopping it at once could cause an adverse reaction as well. The mother said that she explained the entire situation, including her part in improperly administering the medication, to the father. The mother said that she had requested permission from the father to keep the child in her custody for a few extra days to monitor her because of the mother’s concern regarding the incident but that the father had not agreed.
The father testified that the mother had attempted to conceal the incident from the father by requesting to keep the child a few extra days. However, the father said, he had denied the mother’s request, thus forcing her to reveal that the child had been improperly administered medication. He said that the mother had also overdosed the child on the day she returned the child to him by having given her a second dose of the medication before the second dose was due to be administered. The father said that he took the child to her regular pediatrician, who told him that overdosing the medication was very dangerous to the child and who instructed him to take her off of the medication immediately.
The mother suffers from fibromyalgia and is on several medications because of her condition. She takes Darvocet, a narcotic pain reliever, as needed for the pain resulting from her condition, and she also takes Neurontin, Prozac, and Trazodone. The mother admitted that, at times, her condition and her medication have made her sleep during the day; she said that, after her medication was adjusted and after she was prescribed Trazodone to help her sleep at night, she had had fewer episodes of sleeping during the day.
The mother testified that she chose not to work after she took a leave of absence to care for her current husband when he suffered adverse consequences after an elective surgery.- The mother said that her current husband needed constant care after the surgery but that he was now much better at managing most daily tasks. She said that, with his income, she was able to elect to be a homemaker so that she could stay home to rear her children.[1]
The father admitted that he had thought about committing suicide on at least one occasion. The mother testified that her first ex-husband, Richard Middle-brooks, who was a friend of the father’s, had intervened to prevent the father from committing suicide shortly after the parties’ divorce. The father explained that he had suffered, at times, from situational depression. He said that he considered his passing thoughts about committing suicide differently than actual plans to commit suicide. He said that he had sought counseling for his situational depression.
The trial court ordered a custody evaluation to be performed by Dr. John Davis. Dr. Davis’s report was entered into evidence at trial. Dr. Davis indicated that the pendente lite arrangement whereby the father had sole custody of the child while the mother exercised visitation from Thursday to Sunday on alternating weekends should be continued until some point in the future when “other living arrangements settle down and become steady.” Although Dr. Davis did indicate that the pendente lite custody arrangement should be continued because it appeared to provide a steady and consistent environment for the child, Dr. Davis noted in his report that the joint-custody arrangement enjoyed by the parties before the mother relocated had worked satisfactorily for the family. Based on his testing of and interviews with the father, the mother, the *104 mother’s husband, and the child, however, Dr. Davis indicated in his report that the child would be properly cared for in both parents’ environments. Dr. Davis’s report also noted that the child had expressed that she loved her mother and her father equally but that she had indicated a preference to live with her mother.
After the November 2008 trial, the trial court entered a judgment in which it reaffirmed the joint-custody provisions of the parties’ divorce judgment. That judgment stated, in pertinent part:
“1. That the Motion for Contempt filed by the [father] was withdrawn, and the Motion for Temporary Custody filed by the [father] is now moot.
“2. That the Court finds that the [mother] resides in Mobile County when the minor child is with her.
“3. That the Court finds that there is not a material change in circumstances sufficient to modify custody; therefore both Motions to Modify Custody are hereby denied.
“4. That the Court reaffirms the custody and visitation order as set out in paragraphs six, seven, eight, and nine of the Judgment of Divorce previously entered by this Court.”
The father appealed that judgment, and this court reversed, basing our reversal on the trial court’s failure to apply the provisions of the Act to the parties’ respective custody petitions based on the trial court’s finding that the mother resided in Mobile County when she exercised her custodial periods with the child. Marsh v. Smith, 37 So.3d 174 (Ala.Civ.App.2009). In our analysis of the trial court’s judgment, we noted that the judgment
“did not require the mother to continue to exercise her visitation or custodial rights in Mobile County as a condition of maintaining joint custody of the child, nor did it otherwise place any restrictions on its reaffirmation of the custody and visitation provisions of the parties’ divorce judgment. Because nothing in the trial court’s judgment would prevent the mother from exercising her custodial periods with the child in Mississippi, we cannot conclude that the trial court’s judgment was responsive to the pleadings or faithful to the concerns underlying the passage of the Act.”
Marsh, 37 So.3d at 178.
On remand, the trial court entered a judgment on May 14, 2010, in which it stated that “[t]he Court reaffirms the prior order concerning the custody and visitation provisions of the parties. The mother’s custody and visitation rights, however, are hereby conditioned upon her maintaining a place of residence in Mobile County, Alabama where she is to exercise her custody and visitation rights.” The judgment further denied all other “requests] of the parties.” The father filed a postjudgment motion challenging the May 14, 2010, judgment on the grounds that it failed to comply with this court’s mandate and that it was not supported by the evidence presented; he later amended his motion to allege that the mother, after the entry of the May 14, 2010, judgment on remand, had begun taking the child to the mother’s home in Lucedale, Mississippi, to stay during the mother’s custodial periods, in contravention of the judgment on remand. The father’s motion was denied by operation of law. He then appealed.
On appeal, the father first argues that the trial court disregarded this court’s mandate on remand. He says that the trial court erred on remand by failing to follow this court’s remand instructions, which were to “adjudicate the parties’ custody-modification petitions in light of the provisions of the Act and in light of the evidence already presented to the court— *105 including the undisputed evidence that, by relocating to Lucedale, Mississippi, the mother has changed her principal residence (and necessarily one of the child’s two principal residences) to a different state.” Marsh, 37 So.3d at 179. The father relies, in part, on the principle of “law of the case,” which, as we explained in Giardina v. Giardina, 39 So.3d 204, 208 (Ala.Civ.App.2009), requires a trial court to comply with the remand instructions given by the reviewing court.
“ ‘ “The issues decided by an appellate court become the law of the case on remand to the trial court, and the trial court is not free to reconsider those issues.” Ex parte S.T.S., 806 So.2d 336, 341 (Ala.2001) (citing Murphree v. Murphree, 600 So.2d 301 (Ala.Civ.App.1992)). Moreover, on remand, “ ‘the trial court’s duty is to comply with the appellate mandate “according to its true intent and meaning, as determined by the directions given by the reviewing court.’”” Ex parte Jones, 774 So.2d 607, 608 (Ala.Civ.App.2000) (quoting Walker v. Carolina Mills Lumber Co., 441 So.2d 980, 982 (Ala.Civ.App.1983), quoting in turn Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983)).’ ”
Giardina, 39 So.3d at 208 (quoting Brown v. Brown, 20 So.3d 139, 141 (Ala.Civ.App.2009)).
We do not agree with the father that the trial court’s judgment on remand failed to comply with this court’s mandate. We ordered the trial court to consider the competing custody-modification petitions in light of the Act, which the trial court appears to have done. Although the trial court did not specifically outline the process by which it arrived at its new judgment, it is apparent that the trial court, by imposing the geographical restriction on the mother’s exercise of her custodial rights, rejected the mother’s request that she be allowed to relocate the principal residence of the child to Lucedale, Mississippi. See Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996) (“[I]n the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.”). Thus, the trial court’s judgment requiring that the mother’s custodial periods be exercised in Mobile County is tantamount to a denial of her request to be permitted to relocate with the child. The trial court also considered and denied both the mother’s and the father’s petitions to modify custody, as required by our mandate. We therefore cannot agree with the father that the trial court failed to follow our instructions on remand.
We next turn to the father’s mul-tipart argument that the trial court erred by denying his petition to modify custody. We note at the outset that, because the parents shared joint custody of the child, the father was required to prove that a material change of circumstances had occurred and that a change of custody would be in the child’s best interest. Ex parte Couch, 521 So.2d 987, 989 (Ala.1988). Our review of the trial court’s custody judgment is limited.
“When evidence in a child custody case has been presented ore tenus to the trial court, that court’s findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing.”
Ex parte Bryowsky, 676 So.2d at 1324. As noted above, in the absence of specific findings of fact, this court presumes that *106 the trial court made those findings that would support its judgment, provided that such findings are supported by the evidence at trial. Id.
The father makes several separate arguments in support of his contention that the overwhelming weight of the evidence supports a conclusion that a modification of custody was warranted. Because we have concluded that the trial court complied with our mandate on remand by considering and applying the Act and by denying the mother’s request to relocate the child’s principal residence to Lucedale, Mississippi, we do not agree with the father that the trial court determined that the mother had overcome the presumption stated in Ala.Code 1975, § 30-3-169.4, that relocation was not in the child’s best interest. The father is correct in arguing that a material change of circumstances did occur — we stated in Marsh that the mother’s relocation was a material change in circumstances, Marsh, 37 So.3d at 178; however, a trial court is not required to modify custody merely because a change of circumstances has occurred.
“In cases in which a parent seeks a modification of a joint-custody arrangement, the parent must prove ‘ “a material change of circumstances of the parties since the prior [judgment] which change of circumstances is such as to affect the welfare and best interest of the child or children involved.” ’ Watters v. Watters, 918 So.2d 913, 916 (Ala.Civ.App.2005) (quoting Ponder v. Ponder, 50 Ala.App. 27, 30, 276 So.2d 613, 615 (Ala.Civ.App.1973)). In cases in which neither parent has previously been awarded primary physical custody, including cases in which the parties’ agreement to share physical custody was incorporated into the divorce judgment, ‘ “ ‘the best interests of the child’ standard applies.”’ New v. McCullar, 955 So.2d [431] 435 [ (Ala.Civ.App.2006) ] (quoting Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994)).”
Morgan v. Morgan, 964 So.2d 24, 34 (Ala.Civ.App.2007). Thus, the trial court was required to determine whether a modification of custody would be in the best interest of the child.
The father argues that the trial court ignored the recommendation of the court-appointed psychologist, Dr. Davis, and the “unspoken” recommendation of the guardian ad litem that custody of the child should be awarded to the father.[2] The father admits that the trial court would not be bound by the opinion of either Dr. Davis or the guardian ad litem. See C.J.L. v. M.W.B., 879 So.2d 1169, 1181 (Ala.Civ.App.2003) (“[A] trial court may consider, although it is not bound to follow, a recommendation made by a guardian ad litem.”); Ex parte R.D.N., 918 So.2d 100, 105 (Ala.2005) (noting, in a case disapproving of ex parte communication between a guardian ad litem and the trial court, that a trial court has the discretion to “disagree!] with the recommendation of its court-appointed professional in evaluating [a] custody issue”). Thus, although the trial court had evidence and recommendations from which it could have concluded that a change of custody to the father would be in the child’s best interest, it was by no means required to so conclude.
The father further argues that the trial court’s denial of his petition for modification ignores the evidence regarding the *107 mother’s endangering the life of the child with a medication overdose. The evidence at trial regarding whether the mother attempted to hide the incident was disputed; the mother insisted that she had been candid with the father. In addition, as the mother argues in her brief on appeal, the mother testified at trial that the incident had deeply upset her and that she had acted prudently and quickly once she realized her grave error. Indeed, as the father points out, the medication overdose was dangerous and posed a risk to the child’s health; however, the mother acted responsibly once the mistake was discovered, and the child has suffered no ill effects as a result of the inadvertent overdose. We cannot agree with the father that the trial court’s decision not to modify custody on the basis that the mother had accidentally overdosed the child on a medication is reversible error.
Overall, the testimony at trial established that, until the mother remarried and chose to relocate to Lucedale, Mississippi, the joint-custody arrangement was working well for the family. Both parties testified that the pendente lite arrangement, pursuant to which the mother exercised her visitation or custodial periods in Chickasaw, was working well at the time of trial. The father also testified that he would have had no problem continuing the joint-custody arrangement had the mother not moved to Lucedale, Mississippi. Our state favors joint custody, when appropriate, as a means to foster “frequent and continuing contact with parents who have shown the ability to act in the best interest of their children.” Ala.Code 1975, § 80-3-150. The evidence at trial indicated that the parents had demonstrated this ability since the divorce. Thus, the trial court had abundant evidence from which it could have concluded that a continuation of the joint-custody arrangement would be in the best interest of the child, provided the mother was not permitted to change the principal residence of the child. The trial court’s judgment, which requires that the mother exercise her custodial periods in Mobile County, accomplishes both a maintenance of the child’s principal residence in Mobile County and a continuation of the joint-custody arrangement that has worked well for the family since the divorce. Thus, we cannot agree that the trial court erred in denying the father’s petition to modify custody.
The father next argues that the trial court erred by failing to grant his amended postjudgment motion, to which he attached a letter from the mother’s attorney indicating that the mother did not intend to remain in Mobile County to exercise her custodial periods other than during those times that the child was attending school. The father argues that the trial court erred by failing to reopen the evidence to accept that letter from the mother’s attorney and in failing to vacate its judgment continuing the joint-custody arrangement in order to enter a new judgment awarding custody of the child to the father. Although we agree with the father that the letter from the mother’s counsel indicates the mother’s intent to disobey the restriction placed upon the exercise of her custodial periods, we cannot agree that the trial court erred by not reopening the evidence or by failing to vacate its May 14, 2010, judgment.
The father’s postjudgment motion sought to have the trial court alter, amend, or vacate the May 14, 2010, judgment under Rule 59, Ala. R. Civ. P. In order to prevail on such a motion, the father was required to submit newly discovered evidence that warranted the reopening of the evidence. Bates v. State, 503 So.2d 856, 858 (Ala.Civ.App.1987) (stating that motions seeking relief from a judgment on *108 the ground of newly discovered evidence are not granted “when the new evidence comes into being following the conclusion of the trial”). As this court explained in Bates, “[r]elief is barred when it is based on this type of evidence because trials would have the potential to become never-ending.” Bates, 503 So.2d at 858 (citing Moody v. State ex rel. Payne, 344 So.2d 160, 163 (Ala.1977) (“There can be no ... relief for evidence which has come into existence after the trial is over simply because such a procedure would allow all trials perpetual life.”)). The father submitted new evidence — that is, evidence of the mother’s intent to ignore the requirements of the May 14, 2010, judgment when the child was not required to attend school in Mobile County — which was made after the entry of the judgment requiring her to exercise her custodial periods in Mobile County. This new evidence does not support the reopening of the evidence or the vacation of the judgment because it does not assail the evidence upon which the judgment was based. Instead, such new evidence properly forms the basis of a contempt action or a modification action. See Estrada v. Redford, 855 So.2d 551, 554 (Ala.Civ.App.2003) (stating that “[a] change in the mother’s income that occurred after the trial is ‘new evidence’ not ‘newly discovered evidence,’ ” and might entitle the mother to a modification of her child-support obligation). Thus, the trial court did not err in failing to grant the father’s postjudgment motion.
Finally, the father argues that the trial court erred by. refusing to grant the father an attorney fee. Although he admits that the award of such a fee rests entirely in the discretion of the trial court, the father argues that the mother’s decision to move to Mississippi prompted his need to file his objection to her relocation and to seek sole custody. In addition, he notes that other issues arose during the litigation, including the mother’s refusal to pay for half of the child’s day-care expenses and the need to file motions to compel when the mother failed to timely respond to discovery requests. Because the mother testified that she did not need to, and had no intention to, return to gainful employment because of the adequacy of her husband’s disability income to meet their needs, the father argues that she has sufficient funds from which she could pay at least a poi’tion of his attorney fees.
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993).”
Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).
Although the father is correct that the mother testified that her situation is such that she is financially able to be a homemaker, the mother testified that her current husband’s disability income was then-sole support. In addition, although the mother also testified that she had sold her home in Mobile County, she said that she had spent all but about $5,000 of the proceeds from that sale. Thus, the mother’s financial circumstances are not so positive that equity demands that she fund a portion of the father’s attorney fees. Nor does the outcome of the litigation in this case compel a conclusion that the mother *109 should bear the cost of the father’s attorney fee; although the litigation was not entirely resolved in the mother’s favor, it was also not resolved solely in favor of the father. Thus, we conclude that the trial court’s decision not to award the father an attorney fee was not an abuse of its discretion.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. The mother has an older child from a previous marriage.

. The guardian ad litem offered to give her recommendation at trial; however, the trial court did not request that the guardian ad litem state her recommendation on the record. The mother indicated in her testimony that the guardian ad litem appeared to favor the father, and the father asserts that, based on that testimony, we may "glean” that the guardian ad litem would have recommended a modification of custody to the father.