THOMPSON, Presiding Judge.
Goodyear Tire & Rubber Co. (“Goodyear”) appeals from a judgment awarding *134 worker’s compensation benefits to Brian Haygood. The trial court found that Hay-good was permanently and totally disabled as a result of an injury he suffered in a work-related accident, and it awarded benefits accordingly.
The record indicates the following. Haygood’s job at Goodyear was to sort tires by size and tread and “throw” them into the appropriate buggies, which measured three feet by eight feet. Haygood said each of the tires he handled weighed between 40 and 80 pounds. When a buggy was full, Haygood would label it, quickly move that buggy out, and pull another buggy into its place to be filled. Haygood said that on August 12, 2009, he was moving a filled buggy when he felt a “pop” on the bottom of his right foot and experienced a sensation like his foot was “on fire.” He immediately reported the injury to his supervisor, who took him on a cart to see the plant nurse. Haygood said that that night he went to the emergency room and subsequently returned to the plant doctor for a follow-up visit.
Haygood kept working in the days after the August 12 accident, but, he said, the pain in his foot did not subside. He testified that he felt a stabbing pain in his right foot when he put weight on it and that a knot had developed on the bottom of his right foot. Goodyear initially denied that Haygood’s injury was covered under the workers’ compensation system, so when his foot continued hurting Haygood saw a family doctor, John Belyeu. Dr. Belyeu referred Haygood to an orthopedist, Dr. Charles Morley. Haygood first saw Dr. Morley on September 21, 2009. Dr. Morley diagnosed Haygood with a partial tear of the plantar fascia, a band of tissue on the bottom of the foot, and placed a walking cast on Haygood’s right foot. Dr. Morley held Haygood out of work beginning September 21, 2009.
Haygood’s right foot continued to hurt despite the use of the walking cast. When the cast was removed, Dr. Morley found that the arch of Haygood’s right foot was “hypersensitive.” At Dr. Morley’s request, a pressure specific sensory device (“PSSD”) test and an MRI were performed on Haygood’s right foot. The results of the PSSD test and the MRI indicated that Haygood had nerve irritation in his right foot and significant thickening of the plantar fascia that was consistent with chronic irritation or inflammation. In his deposition, Dr. Morley testified that the PSSD test and the MRI provided objective corroboration of Haygood’s complaints of pain and periodic numbness and tingling in his foot. Dr. Morley said that the findings were consistent with an injury caused by trauma or overuse, and he diagnosed Hay-good with post-traumatic plantar fasciitis, heel-pain syndrome, and aggravation of tarsal tunnel compression, which Dr. Morley compared with the better known carpal tunnel syndrome.
Dr. Morley operated on Haygood’s right foot in January 2010, but the pain continued. On March 2, 2010, Dr. Morley examined Haygood’s right foot and discovered that it still had generalized swelling and that Haygood’s toes were “red and shiny and cold to the touch.” Dr. Morley was concerned that Haygood had complex regional pain syndrome (“CRPS”), which he described as
“a situation in which the nerves common in the foot from factors we don’t entirely understand will become hypersensitive and overactive and cause the foot to burn and tingle and cause circulation changes which can cause the foot to change color, becoming bright red, shiny as his toes were or sometimes becoming pale, bluish color. It can also cause temperature fluctuation in a person. They feel as though the foot is burning *135 hot one moment and icy cold the next. [Haygood] did not have complaints of temperature change or color change particularly but his sensitivity in his foot was consistent with what we associate with this situation of CRPS.”
Because of his concern that Haygood had CRPS, Dr. Morley referred him to Dr. Michael Cosgrove, who specializes in pain management.
Dr. Cosgrove determined that the origin of Haygood’s pain
“could represent partially a neuropathic origin, a milder variant of CRPS. Per the diagnostic criteria, he is one shy for me on my exams of meeting the criteria. You know, it’s not quite an all or none phenomenon. He has many of the characteristics of it, but not enough to meet the classic diagnostic.”
At the same time that Haygood’s right foot was hurting, and continuing after his January 2010 surgery, Haygood’s left foot, left leg, and back began hurting as well. Haygood brought those complaints to Dr. Cosgrove’s attention. In his deposition, Dr. Cosgrove testified that complaints like Haygood’s are “quite common in patients with lower extremity problems” and attributed the complaints to Haygood’s altered gait.
In July 2010, Haygood underwent a functional-capacities evaluation (“FCE”) at Dr. Morle/s request. Sheral Serafini, who conducted the FCE, noted that Hay-good told her that he could not walk without using a cane and that he “refused to attempt ambulation” without the cane. The FCE report also states that Haygood could not walk even short distances without using the cane because of his pain and that Haygood was “self limiting” because of pain.
At the start of the trial, the parties stipulated that Dr. Morley had determined that Haygood had reached maximum medical improvement (“MMI”) on September 19, 2010. They also stipulated that Dr. Morley established that Haygood had a partial medical impairment of 10% to the right foot, a partial medical impairment of 7% to the lower extremity, and a 3% whole-person medical impairment.
Dr. Martin Jones, Jr., an orthopedic spine surgeon, testified by deposition that he had examined Haygood several times in the fall of 2010 because of Haygood’s complaint of back pain. Dr. Jones said that Haygood told him that he was not sure how the back pain had begun but related that he had been walking with an altered gait. Dr. Jones performed an MRI and determined that Haygood had a herniation of the L4 disk and a bulging disk at the L5 disk of his spine. Dr. Jones testified that “there was no way to know absolutely for sure” but that, because Haygood was doing his job with no problem before he injured his foot, he thought it “not unreasonable to assume that the altered gait could have aggravated [Haygood’s] underlying back condition whether it was preexisting or it was created as a result of the altered gait.”
At the trial, Haygood testified that his right foot constantly hurts and that, even when he is lying down, he experiences burning and tingling sensations in his foot. The pain wakes him up. He also said that he lies down about 23 hours a day and that he often cries because of the pain. He said that he often falls because of the numbness in his foot. Haygood said that, because of the pain, he can no longer do the things he could do before the injury, both at work and at home. He testified that he seldom leaves his house and that he has only left his house twice to go to a Walmart store in the two years since the 2009 accident. In addition, he said, he had to ride around the Walmart store in a cart. *136 Although no physician has prescribed a cane for him, Haygood said that he uses a cane, even in the house, and that he treats it as a third leg. In addition to the medication Haygood takes several times a day for pain, which he has consistently rated as a 9 or a 10 on a scale of 1 to 10, Dr. Cosgrove has prescribed antidepressants for Haygood.
The week before the trial of this case, Haygood saw Dr. Eric Beck, who ordered that Haygood undergo a second FCE. That FCE was performed by David Hing-er on April 6, 2011, before the trial of this case began on April 11, 2011. Dr. Beck also examined Haygood on April 7, 2011, and testified regarding his findings at the April 11 trial. As a result of his examination, Dr. Beck said, he recommended that additional nerve testing be performed on Haygood’s legs because Dr. Beck was concerned that Haygood did not meet the criteria for CRPS and that there had been “a misdiagnosis or an ongoing problem that has not been picked up that could be fixed.” Dr. Beck said that he was also concerned that “there can be an underlying medical condition that’s not related to this as a work injury that’s being missed because it is [being treated as] a work injury.” Dr. Beck said that he also recommended that Haygood undergo a psychological evaluation because, he said, there were “multiple nonphysiological signs” of Haygood’s problem that indicated “the presence of psychological overlay.”
After hearing the testimony at trial and considering the evidentiary submissions of the parties, including Haygood’s medical records and the depositions of Drs. Morley, Cosgrove, and Jones, the trial court entered a detailed judgment, concluding that Haygood was permanently and totally disabled and awarding Haygood the appropriate benefits. Goodyear appealed.
Goodyear contends that the trial court abused its discretion in denying its motion for a continuance in light of Dr. Beck’s recommendations that Haygood undergo further physical and psychological testing after Haygood’s second FCE and Dr. Cosgrove’s inability to review Dr. Beck’s recommendations before trial because he was out of town.
The decision whether to grant or deny a continuance will be reversed on appeal only upon a showing of “palpable” or “gross abuse” of the trial court’s discretion. Ex parte Sparks, 699 So.2d 1268, 1269 (Ala.Civ.App.1997); Autery v. Autery, 515 So.2d 708, 709 (Ala.Civ.App.1987). In Town of Addison v. Cooke, 689 So.2d 184, 188 (Ala.Civ.App.1997), a workers’ compensation case, this court held:
“The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court; however, that discretion is not without limitation. In the matter of R.F., 656 So.2d 1237 (Ala.Civ.App.1995). ‘As a general rule, continuances are not favored, and this court will not reverse the denial of a continuance without a showing of an abuse of discretion.’ In the matter of R.F., 656 So.2d at 1288.”
In In re Vosyka, 494 So.2d 421, 423-24 (Ala.Civ.App.1986), this court discussed the factors a trial court is to consider when determining whether to grant or deny a motion for a continuance, saying:
“In Ex parte Driver, 258 Ala. 233, 62 So.2d 241 (1952), the court listed certain guidelines for determining whether a continuance is warranted by the absence of a certain witness or evidence. These guidelines included:
“‘(1) that the expected evidence will be material and competent; (2) a probability that the testimony can be obtained at a future date to which the cause may be continued or postponed; *137 (3) due diligence having been exercised by the movant to secure the absent witness or evidence; (4) the expected evidence must be credible and will probably affect the result[;] (5) the evidence must not be merely cumulative or impeaching; [and] (6) that the motion for continuance is not made merely for purposes of delay.’ ”
At the outset of the trial on April 11, the trial court explained its reasoning for denying Goodyear’s motion for a continuance as follows:
“Well, let me say this. When this issue came up about another FCE, you know, my intention if the matter had been brought to me — I think y’all apparently worked it out without having to involve the court. But if it could have been scheduled in time to get it done by trial, then I was going to say, you know, that’s fine, let’s do it. But it was not with the intention that the case would be postponed yet again.
“So, I mean, when you get up to a point where I think on February 28th before, of course, the death of your father-in-law, everybody was ready to go and then had to drop back and, understandably, as a result of a funeral, had to put that off. And then everybody was looking towards this date and the, you know, you can get to a point where you’re too ready at one point and then you start thinking about all these things that can be done in addition.
“But at some point, the case just needs to be tried. And I think the original request was for another FCE. That was obtained and seemed to me that if Dr. Beck’s conclusions are — or Cosgrove or whoever did it, you know, the results were invalid or the effort, maximum effort wasn’t obtained from the plaintiff, that can only work to the defendant’s benefit at this point. And we could probably spend another six months trying to explain why the results were the way they were, but I think we probably just need to look at the results and get Dr. Beck’s testimony and move on from there.”
In Jim Walter Resources, Inc. v. Bentley, 560 So.2d 1072 (Ala.Civ.App.1990), the employer sought a continuance on the day of the trial for the purpose of having the employee submit to a program of vocational rehabilitation. By proceeding to hear evidence and by ultimately rendering a final judgment, the trial court impliedly denied the motion. This court held that the trial court had not abused its discretion by taking such action, explaining:
“The employer notes that two medical and two vocational experts indicated that the employee might benefit from vocational rehabilitation, yet its written request for continuance was not filed until the day of the trial. It argues that such opinions support its contention that the continuance should have been granted, although no plausible explanation exists for the employer’s delay in requesting a continuance. Because of the timing of the employer’s motion, we do not find error or abuse of discretion by the trial court in denying such motion. See Swann v. Caylor, 516 So.2d 699 (Ala.Civ.App.1987).”
Id. at 1073.
Here, Goodyear’s motion for a continuance was filed on Friday, April 8, 2011; the trial was scheduled to begin on Monday, April 11, 2011. There is no contention that the trial court erred in its statement that, in February 2011, both parties announced that they were ready for trial. But for the death of a family member of one of the attorneys for Goodyear, this case would have been tried before April 11, 2011. The parties disputed how the April 6, 2011, FCE was requested. Goodyear *138 asserted that Dr. Cosgrove requested the FCE. Haygood asserted that the case manager for Goodyear’s workers’ compensation carrier requested the FCE.[1]
Dr. Beck’s report of his examination of Haygood’s foot on April 7, 2011 — the day after the second FCE was conducted — is titled “Independent Medical Evaluation Report” and states that the “client organization” was “Liberty Mutual” and that the referral source was Dr. Cosgrove.
It is true that, at the time of the trial, Haygood’s treating physicians had not definitively determined the cause of his continuing pain, but there were objective indications corroborating his complaints of pain. .For example, when Dr. Beck examined Haygood the week before the trial, he found that there was a three-degree difference between the temperatures of Hay-good’s right foot and his left foot. Dr. Beck stated that Haygood would not have been able to manipulate that temperature differential. Dr. Cosgrove’s examinations of Haygood’s right foot showed that his toes were red and shiny.
More important in our consideration of whether the trial court abused its discretion in denying the motion for a continuance, Dr. Beck was present for the April 11, 2011, trial. He was able to testify regarding the results of the April 6, 2011, FCE conducted on Haygood and his impressions based on those results. In fact, in the judgment, the trial court notes that “the significant portion of the trial centered around the testimony of Dr. Beck and the 30 minute evaluation he was asked to conduct.” Dr. Beck was concerned that Haygood’s condition might have been misdiagnosed, and he ordered further testing, including testing of the nerves in Hay-good’s right foot. Such a test had already been conducted, and there is no evidence in the record to indicate that further testing would have resulted in a definitive diagnosis of Haygood’s condition. Dr. Beck’s examination amounts to a second opinion, one that calls into question the previous diagnosis of Haygood’s treating physicians. Dr. Beck was allowed to testify as to his concerns, and the trial court was able to consider those concerns in weighing its decision. Also, as to the further psychological testing recommended, the record indicates that Haygood’s treating physicians had already recognized that Haygood was suffering from depression as a result of his disability.
The trial court’s reasons for denying a continuance were rational and well-considered. Goodyear has failed to demonstrate that the trial court’s decision to deny its motion was palpably wrong or a gross abuse of discretion, and, therefore, the trial court’s refusal to grant the motion does not constitute a basis for reversal. See *139 Jim Walter Resources, Inc., 560 So.2d at 1073.
Goodyear also asserts that the trial court abused its discretion in denying its postjudgment motions, both of which were filed pursuant to Rule 59, Ala. R. Civ. P. The judgment was entered on April 26, 2011. On April 29, 2011, Goodyear filed a motion to alter, amend, or vacate the judgment “to allow [Haygood’s] authorized treating physician to complete his evaluation, diagnosis, and treatment of [Hay-good’s] condition, or in the alternative, to amend its order to allow for Dr. Cos-grove’s evaluation of [Haygood’s] condition to be considered by the Court prior to entering a final order.” The trial court denied the motion on May 16, 2011.
On May 20, 2011, still within 30 days of the entry of the judgment, see Rule 59(e), Ala. R. Civ. P., Goodyear filed a second postjudgment motion. In the May 20 motion, Goodyear sought a new trial to consider the results of the additional tests Dr. Beck had recommended as a result of the April 6, 2011, FCE and his examination of Haygood on April 7, 2011. Attached to the May 20, 2011, motion were copies of the test results, which, according to Goodyear, indicated that Haygood’s complaints of pain were not principally due to his work injury but could be attributed to other unrelated medical conditions. Goodyear asked the trial court to accept “additional evidence which was not considered in the original judgment, amend its findings of fact and conclusions of law or make new findings and conclusions and enter a new judgment based on this newly received evidence.” The trial court denied that motion on the day it was filed, saying that it had already denied Goodyear’s first post-judgment motion and that “the Alabama Rules of Civil Procedure do not recognize the ability of a party to file successive Rule 59 motions, thus rendering this second Rule 59 motion a nullity.”
On appeal, Goodyear argues that, because its second postjudgment motion was filed within 30 days of the entry of the judgment, the trial court still had jurisdiction to consider that motion. Goodyear asserts that the Rules of Civil Procedure do not require postjudgment motions to be filed at the same time if they seek alternative relief. Goodyear argues that, in its first postjudgment motion, it sought to have the trial court alter, amend, or vacate the judgment in light of new evidence and that, in its second postjudgment motion, it sought a new trial to allow the trial court to consider new evidence.
Generally, whether to grant or deny a posttrial motion is within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless by its ruling the court abused some legal right and the record plainly shows that the trial court erred. Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38 (Ala.1990). This court has held that if a second postjudgment motion
“is deemed to be an amendment to a previous postjudgment motion, that amendment will trigger a new 90-day jurisdictional period only if the amendment is filed within 30 days after the original judgment, ie., within the time for filing an ‘original’ postjudgment motion. Compare Thompson v. Keith, 365 So.2d 971, 973 (Ala.1978) (amended motion filed more than 30 days after judgment did not restart 90-day clock under Rule 59.1), with Ex parte Cleveland Consol., Inc., 435 So.2d 1285, 1287 (Ala.1983) (90-day period under Rule 59.1 began to run from date of filing of amended postjudgment motion filed less than 30 days after entry of judgment).”
Roden v. Roden, 937 So.2d 83, 85 (Ala.Civ.App.2006).
“Under Alabama law, if a party files a postjudgment motion that neither (1) re *140 quests relief on grounds different from or additional to the grounds asserted in a previous postjudgment motion so as to amount to a proper amendment to the earlier motion, nor (2) seeks different postjudgment relief so as to be a separate postjudgment motion, the second-filed motion is not due to be treated as a separate motion but as a mere repetitive filing.”
Curry v. Curry, 962 So.2d 261, 264 (Ala.Civ.App.2007).
The holdings in Roden and Curry indicate that a second postjudgment motion is not to be precluded from the trial court’s consideration merely because a party already has filed one postjudgment motion. The trial court must look to the substance of the motion to see whether it constitutes an “amendment” to the first postjudgment motion.[2]
Goodyear concedes that the relief sought in the second postjudgment motion “was effectively the same” as the relief sought in the first postjudgment motion, but, it points out, the basis of the second postjudgment motion was distinct from the basis of the first postjudgment motion because, in the second postjudgment motion, it asked the trial court to consider the new evidence that was not available when it filed the first postjudgment motion. As explained below, however, we need not determine whether Goodyear’s second postjudgment motion constituted an amendment to the first postjudgment motion or whether it was a repetitive filing because, even if the trial court’s refusal to consider the second postjudgment motion was error, such error was harmless. See Rule 45, Ala. R.App. P. (“No judgment may be reversed or set aside, nor new trial granted in any civil ... case ... for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”).
In Marsh v. Smith, 67 So.3d 100 (Ala.Civ.App.2011), this court was asked to consider whether a trial court had abused its discretion in denying a Rule 59(e) post-judgment motion in which a father had sought to have the trial court alter, amend, or vacate the trial court’s judgment refusing the father’s request for a custody modification. This court wrote:
“In order to prevail on such a motion, the father was required to submit newly discovered evidence that warranted the reopening of the evidence. Bates v. State, 503 So.2d 856, 858 (Ala.Civ.App.1987) (stating that motions seeking relief from a judgment on the ground of newly discovered evidence are not granted ‘when the new evidence comes into being following the conclusion of the trial’). As this court explained in Bates, ‘[rjelief is barred when it is based on this type of evidence because trials would have the potential to become never-ending.’ Bates, 503 So.2d at 858 (citing Moody v. State ex rel. Payne, 344 So.2d 160, 163 (Ala.1977) (‘There can be no ... relief for evidence which has come into existence after the trial is over simply because such a procedure would allow all trials perpetual life.’)).”
Marsh, 67 So.3d at 107-08.
In this case, as in Marsh, Goodyear’s postjudgment motions requested that the *141 trial court reopen the proceedings to consider evidence that was not in existence at the time of the trial, as opposed to newly discovered evidence. Specifically, Goodyear asked the court to consider the results of physical and psychological testing that had been performed on Haygood after the trial had concluded. Because a judgment cannot be vacated or revised on the ground of new evidence that comes into existence after the trial, Goodyear’s post-judgment motions could not be granted. Therefore, even if the trial court did abuse its discretion in refusing to consider the second postjudgment motion, because that motion could not have been granted on the ground stated by Goodyear, such an abuse of discretion, if any, is harmless.
Goodyear argues that the trial court erred in finding that Haygood is permanently and totally disabled. Specifically, Goodyear asserts that the evidence does not support a finding that Haygood’s complaints of pain were principally the result of his work injury. Instead, it asserts, his pain was caused by other, unrelated medical conditions.
The standard of appellate review in workers’ compensation cases is governed by § 25-5-81(e), Ala.Code 1975, which provides, in part, that, “[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” § 25-5-81(e)(2). “Substantial evidence” is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
In support of its argument that the evidence does not support a finding that Hay-good’s pain was the result of his work injury, Goodyear relies on the results of the tests conducted on Haygood in response to Dr. Beck’s recommendations, Dr. Beck’s belief that Haygood’s previous physicians had misdiagnosed the cause of Haygood’s chronic pain, and Dr. Cos-grove’s response to Dr. Beck’s recommendations. Goodyear argues that the trial court did not have a complete record when it made its determination of Haygood’s disability.
We have already determined that the trial court did not abuse its discretion in denying the motion for a continuance and that the denial of Goodyear’s postjudgment motions seeking to introduce new evidence did not constitute reversible error. Furthermore, in its judgment the trial court noted that, although it found the April 2011 FCE and the medical examination by Dr. Beck of limited value because Dr. Beck and the FCE examiner did not have “available the same complete evidence available to this Court,” it did consider portions of Dr. Beck’s testimony in reaching its conclusion. The trial court stated that Dr. Beck had noted in his examination that Haygood had to lie down twice during the examination. Dr. Beck also found that Haygood had “diffuse tenderness to the low back” and that Haygood had a callus on the palm of his right hand. The trial court found that the callus “confirms [Hay-good’s] regular use of the cane.” The trial court further noted that Dr. Beck had testified that symptoms of CRPS “wax and wane and that all of the symptoms may not be present within the examination and in every limb on every occasion on a physical examination.” Our review of Dr. Beck’s testimony in the record shows that the trial court’s findings are reflected in the record.
Goodyear does not argue that the evidence that does appear in the record does not support the trial court’s finding that *142 Haygood is permanently disabled. However, out of an abundance of caution, we note that the evidence in the record does support such a finding. Haygood testified to debilitating pain in his foot, consistently rating the pain as a 9, a 10, or 10-plus on a scale of l-to-10. He testified to his inability to do things such as sleep, stand, drive, shop, ride his motorcycle, or do other things that are routine in most people’s daily lives. In the judgment, the trial court stated that its own observations of Haygood showed that his “limitations are significant and [that Haygood] appeared to be struggling with pain, even at rest.”
Objective evidence was presented that tended to corroborate Haygood’s subjective complaints of pain. For example, when Dr. Beck examined Haygood more than a year and a half after the accident, Haygood still had a temperature differential of three degrees between his right foot and his left foot. Dr. Beck said that Hay-good would not have been able to manipulate that difference. Even after Dr. Morley performed surgery on Haygood’s right foot, Dr. Morley reported that the foot still had generalized swelling and that the toes on that foot were “red and shiny and cold to the touch.” Dr. Cosgrove and Dr. Jones both opined that the pain Haygood began experiencing in his left foot and leg and lower back could have been caused by his altered gait, which Haygood had adopted to attempt to alleviate the pain in his right foot.
This court has held that “for pain in a scheduled member to be totally, or virtually totally, debilitating to the body as a whole, that pain must be such that it completely, or almost completely, prevents the worker from engaging in physical activities with the uninjured parts of his or her body.” G.UB.MK Constructors v. Davis, 78 So.3d 998, 1002 (Ala.Civ.App.2011) (citing Norandal U.S.A., Inc. v. Graben, [Ms. 2080679, March 12, 2010] — So.Sd —(Ala.Civ.App.2010)). Haygood presented sufficient evidence to meet that “exceedingly high standard.” Norandal, — So.3d at —.
The trial court in this case specifically found that, based on the evidence presented and its own observations of Haygood, “the effects of the right foot pain alone (absent the additional limitation with the lumbar spine) are so severe that it virtually totally physically disables [Haygood].” Based on our review of the record, we conclude that substantial evidence supports the findings of the trial court.
Goodyear asserts that the trial court erred by awarding Haygood permanent-total-disability benefits based on his claimed back injury, even though, Goodyear says, there was no evidence that he had reached MMI as to his back condition. At the start of the trial, Goodyear stipulated that Dr. Morley had determined that Haygood had reached MMI on September 19, 2010. Moreover, as pointed out above, the trial court explicitly found that “the effects of the right foot pain alone (absent the additional limitation with the lumbar spine) are so severe that it virtually totally physically disables [Haygood].” Nonetheless, we note that there is nothing in the record to suggest that Haygood’s right-foot pain will lessen or that, over time, he will no longer walk with an altered gait. Haygood’s treating physicians testified that the altered gait could be the cause of Haygood’s lower-back pain, either alone or by aggravating a preexisting condition. We have no evidence before us to suggest that Haygood’s back pain will ease as long as he continues to walk with an altered gait.
Furthermore, the date of MMI is the date used to calculate when a temporary disability ends. See AAA Cooper Transp.v. Philyaw, 842 So.2d 689, 692 *143 (Ala.Civ.App.2002). Because the trial court found that Haygood is permanently and totally disabled as a result of the pain he has from his right-foot injury alone and explicitly excluded the limitations Haygood has as a result of his back pain in that finding, a finding that Haygood has reached MMI as to his back would not negate the finding that Haygood is permanently and totally disabled as a result of the injury to his right foot.
For the reasons set forth above, we conclude that Goodyear has failed to demonstrate that the trial court’s judgment should be reversed. Accordingly, the judgment is affirmed.
Haygood’s motion to strike is denied on the basis that it is moot.
AFFIRMED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. At the end of the trial, Goodyear’s attorneys sought to leave the record open so that Dr. Cosgrove’s opinion regarding the testing that Dr. Beck had recommended could be included in the record. Dr. Cosgrove was out of town and was not immediately available to review Dr. Beck’s findings as a result of the April 6, 2011, FCE and his subsequent examination of Haygood. The trial court asked "what precipitated the request” for the FCE and medical evaluation on the eve of trial, "which has kicked off this whole cascade of additional medical requests?” Goodyear’s attorney replied:
"There were questions sent to — which I'm sure Debbie will be there — questions sent to the adjuster or I can’t remember who by — there were questions sent to the doctor. And in response to the questions, he said we need to do this. And so we said, okay, we're gonna do this."
Because this discussion took place after the triál court had ruled on the motion for a continuance, we have not considered it in determining whether the denial of the continuance was proper.

. We take this opportunity to note that because Goodyear’s second postjudgment motion was filed within 30 days of the entry of the judgment, that postjudgment motion was required to be treated as a motion filed pursuant to Rule 59(e), not as a Rule 60(b), Ala. R. Civ. P., motion seeking relief from a judgment based on newly discovered evidence. See Curry, 962 So.2d at 263-64, and the cases cited therein.