PITTMAN, Judge.
Kennamer Brothers, Inc. (“the employer”), timely sought appellate review of a judgment entered by the Marshall Circuit Court awarding Ronney Stewart (“the employee”) temporary-total-disability (“TTD”) benefits and medical benefits under the Alabama Workers’ Compensation Act, Ala. Code 1975, § 25-5-1 et seq. (“the Act”), for, among other things, a rotator-cuff tear suffered by the employee that, the trial court determined, had resulted from an accident arising out of and in the course of the employee’s employment.[1] We affirm the trial court’s com- *1188 pensability determination but reverse as to its calculation of TTD benefits.
In December 2013, the employee brought a civil action against the employer, alleging that, on October 25, 2012, while the employee was in, the line and scope of his employment as a truck driver, the vehicle he. was. operating overturned and crashed on an interstate highway in Tennessee, causing him to “receive[ ] injuries to his head, neck, back, left arm, legs, and body as a whole.” In June 2015, the employee amended his complaint to add allegations of an injury to his right arm and right shoulder. The employer denied in its answer, as amended, that the employee’s injuries were compensable under the Act. After an ore tenus proceeding, at which the employee testified and the parties submitted evidentiary exhibits, including the transcribed deposition testimony of both lay and expert witnesses, the trial court entered a judgment that, in pertinent part, determined that the employee’s right-shoulder condition (i.e., a rotator-cuff tear) was a compensable injury that had been caused by the October 25, 2012, work-related incident; that the employee was entitled to maximum TTD benefits dating from December 21, 2012 (when the employer had stopped paying TTD benefits to the employee) to January 28, 2014 (when the employee acquired another job); and that those benefits amounted to $771 per week from December 21, 2012, to July 1, 2013, and $788 per week from July 1, 2013, to January 28, 2014.
Our standard of review is - set forth in Ex parte Saad’s Healthcare Services, Inc., 19 So.3d 862 (Ala.2008):
. “ ‘An appellate court reviews the burden of proof applied at trial and other legal issues in workers’ compensation claims without a presumption of correctness.’ However, ‘[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if- that finding is supported by -substantial evidence.’ ‘The trial court’s findings of fact “‘on disputed evidence in a workers’ compensation case are conclusive.’ ” ’ ”
19 So.3d at 870-71 (citations omitted). We also add that, in reviewing factual determinations, an appellate court “must view the facts in the light most favorable to the findings of the trial court.” Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003).
 The employer’s first issue is whether the trial court erred in determining that the employee’s right-shoulder condition was, as a medical matter, caused by his truck crash. In cases involving alleged “accidents,” that is, those involving “a sudden and traumatic event” such as-the employee’s truck crash, “an employee must produce substantial evidence tending to show that the alleged accident occurred and must also establish medical causation by showing that the accident caused or was a contributing cause of the injury.” Pair v. Jack’s Family Rests., Inc., 765 So.2d 678, 681 (Ala.Civ.App.2000) (citing Ex parte Trinity Indus., Inc., 680 So.2d 262, 266 n. 3 (Ala.1996)). “Whether the employment caused an injury is a question of fact to be resolved by the trial court,” Tenax Mfg. Alabama, LLC v. Holt, 979 So.2d 105, 112 (Ala.Civ.App.2007).
*1189 The record reflects that the employee, who was 52 years old at the time of trial and has worked almost exclusively as. a truck driver for the past 3 decades, was transported from the scene of the crash on Interstate Highway 24 via helicopter to a hospital in Nashville, Tennessee, where he was diagnosed with a concussion and a scalp laceration requiring the insertion of staples and the removal of foreign bodies; he was discharged from the hospital with instructions that he take oxycodone, a prescription pain medication. Approximately one week after his discharge, he reported joint pain and headaches to personnel at an urgent-care clinic in Boaz, which referred him to a neurosurgeon for further evaluation and treatment; that neurosurgeon also prescribed oxycodone. for the employee’s head wound and referred the employee to a plastic surgeon for further treatment. Over the course of approximately two months, the plastic surgeon treated the employee’s head wound, performing multiple glass-removal' procedures on the wound, prescribing antibiotic medicines to combat infection, and prescribing hydroeodone for pain.
At trial, the employee testified that he had noticed issues with his right shoulder as he came off the pain medication that he had been prescribed. On March 26, 2013, after completing initial treatment for the head wound, the employee returned to the neurologist, reporting lower back pain radiating to his legs, neck pain, and “whole arm pain,” among other symptoms. The neurologist noted that the employee had been taking aspirin with no relief of his pain symptoms. The neurologist assessed the employee’s condition as being “[d]if-fuse upper and lower extremity symptoms with a significant numbness and tingling component,” but, after ordering a magnetic-resonance-imaging (“MRI”) procedure, the neurologist determined that the employee was at maximum medical improvement (“MMI”) with no impairment.
The employee then requested a panel of* four physicians pursuant to Ala. Code 1975, § 25-5-77(a), a portion of the Act pertaining to employer authorization for medical treatment, and selected an ortho? pedic specialist from that panel; during the employee’s first consultation with that orthopedist on August 28, 2013, the employee reported problems with his back, neck, and both arms stemming from the truck crash.' The employee testified at trial that he had informed the orthopedist at that consultation that his right arm had been hurting when he had put on a jacket and had removed a tea container from his refrigerator. After the employee underwent a surgical repair stemming from his head injury and completed several weeks of physical therapy with minimal effect, he returned to the orthopedist, who referred the employee for neurological testing that revealed the employee was suffering from a moderate to severe ulnar entrapment in his left arm. Because blocking injections failed to cause the employee’s condition to improve, the orthopedist referred-the employee to another physician in his practice, who diagnosed the employee with cubital tunnel syndrome and performed a release surgery on the employee’s left arm in December 2013. However, the operating physician noted in his records that the employee’s right shoulder remained an issue.
After the employee had been assessed as having reached MMI as to his head injury and left-arm condition, he underwent a functional-capacity evaluation; however, the evaluator noted that the employee had complained of sharp pain in his right shoulder, and he declined to provide an impairment rating as to the employee’s right shoulder because it had not been fully evaluated. The employee thereafter consulted another orthopedic specialist, Dr. Eric W. Janssen, concerning his right-shoulder pain; Dr. Janssen ordered that the employee undergo an MRI procedure *1190 as to his right arm, which revealed a full-thickness tear in his right-shoulder rotator cuff. Dr. Janssen opined at that time that the employee’s rotator cuff required an arthroscopic repair. Dr. Janssen’s deposition testimony was introduced by the employee at trial; in that deposition, he noted on direct questioning from counsel for the employee that the pain symptoms reported by the employee in March 2013 were consistent with both the employee’s self-reported medical history and a rotator-cuff injury, and he testified that, in his professional opinion, the employee’s truck crash caused or contributed to cause the symptoms that the employee was experiencing in his right shoulder.
At Dr. Janssen’s deposition, counsel for the employer asked whether a rotator-cuff tear from a traumatic event would typically be immediately noticeable. He responded by saying that when a patient, typically a younger patient, suffers a rotator-cuff tear via throwing or heavy lifting, it is generally quite painful and that “most times” it would be immediately noticeable. Although Dr. Janssen agreed that it would be unusual for someone suffering such an injury not to report shoulder pain for approximately a year, he also testified that “there’s a lot of variability” as to patient pain complaints. Further, although Dr. Janssen, after having his attention drawn to a chart of the employee’s pain complaints at an August 28, 2013, consultation with another physician that did not indicate right-shoulder pain symptoms, opined that an absence of pain complaints for such a period would tend to show that there was no relationship between the trauma and the right-shoulder condition, the employee’s own trial testimony was to the effect that he had orally reported transient right-shoulder pain to that physician on that date rather than marking it on the chart at check-in. Moreover, on further examination by counsel for the employee, Dr. Jans-sen acknowledged not only that pain from more severely injured areas of the body could “mask” symptoms of a rotator-cuff tear, but also that the medications administered to the employee for those conditions could have alleviated such symptoms, although he testified on further cross-examination that a year’s delay in reporting symptoms would not likely occur even given the employee’s medication history.
Contrary to the employer’s overarching contention, the record in this case does not unequivocally show that the employee did not report any right-shoulder symptoms for approximately a year after the truck crash, although the medical records introduced indicate that the employee’s earliest documented report of potential symptoms in his right shoulder occurred no earlier than five months after the truck crash. However, as we noted in Fab Arc Steel Supply, Inc. v. Dodd, 168 So.3d 1244, 1256 (Ala.Civ.App.2015), symptoms that first appear a few hours, days, or even months after a traumatic event may nonetheless properly be deemed caused by that trauma if no intervening event has occurred and no alternative medical explanation is provided for the appearance of the symptoms. The employer has pointed to no other traumatic event that could have caused the employee’s right-rotator-cuff symptoms (indeed, the employee, denied having experienced any such other traumatic event since the crash), and it offers no other potential causal explanation for the onset of the employee’s symptoms. Given the expert testimony of Dr. Janssen concerning the extent of variability of patient pain complaints in the context of rotator-cuff injuries, as well as his opinion that the crash caused or contributed to cause the employee’s right-shoulder rotator-cuff condition and the employee’s own testimony regarding the onset of symptoms, we cannot conclude that the trial court’s *1191 determination of medical causation is not supported by substantial evidence.
The second issue raised by the employer concerns whether the trial court properly determined that the employee’s TTD stemming from the truck crash extended from December 21, 2012, to January 28, 2014.[2] The holding in Fab Arc, supra, recognizes the general rule that TTD benefits are not payable if, before MMI is reached, the injured employee is able to work and earn his preinjury wages, but he or she is prevented from working for reasons unrelated to his or her workplace injury. 168 So.3d at 1259 (citing United States Steel Corp. v. McBrayer, 908 So.2d 947 (Ala.Civ.App.2005)).
The employer points to evidence in the record tending to indicate that, notwithstanding an initial medical release to resume working, the employee’s employment was terminated by the employer on February 4, 2013, when he reported to work but was informed that the employer was not able to secure insurance coverage as to the employee because of his having been involved in automobile crashes. However, assuming the truth of that representation to the employee, the trial court could properly have determined that that reason for terminating the employee’s employment is not unrelated to the injury he sustained— had the employee not been involved in the crash, it could be inferred, he would not have been deemed an impossibly high insurance risk and would have continued performing his previous driving duties for the employer. Further, there was conflicting testimony in the record regarding the reason why the employee was unable to find a replacement driving position after February 4, 2013, but before January 28, 2014; although the employee indicated at his deposition that he had committed a criminal offense approximately 20 years before and that he had been denied work in the past because of his “background,” he testified at trial that the actual reason why he had been unable to secure work had been because he had been unable to obtain medical releases necessary to secure a medical certificate apparently required pursuant to federal motor-carrier regulations. The record also indicates that the employee had been restricted from engaging in the lifting of heavy loads incidental to his driving duties in August 2013 by the orthopedist whom the employee had selected from a panel of four after the neurologist who had initially treated the employee had released him to return to work notwithstanding his remaining physical symptoms. Given the employee’s long-term work history as a truck driver and the absence of evidence that the employee could have secured alternative suitable employment during his recovery period but for the circumstances of his injury, we cannot conclude that the employee did not show “a causal link between his injury and his diminished earning capacity” during the period specified by the trial court. Team Am. of Tennessee v. Stewart, 998 So.2d 483, 487 (Ala.Civ.App.2008).
The final issue raised by the employer concerns whether the TTD award in the judgment is in violation of Ala. Code 1975, § 25-5-68, which specifies in subsection (a) that the maximum compensation payable under the Act is “100 percent of the average weekly wage” of the state as administratively determined by the director of the Alabama Department of Labor as of July 1 of each year but also states in subsection (e) that the “maximum benefits that are in effect on the date of the accident which results in injury or death shall be applica *1192 ble for the full period during which compensation is payable.” In this case, the trial court awarded the employee TTD benefits of $771 per week from December 21, 2012, to July 1, 2013, which was the average weekly wage in effect at the time of the employee’s accident, but $788 per week from July 1, 2013 .to January 28, 2014, .based upon the director’s determination of the average weekly wage of the state as of July 1, 2013. The employer contends, and the employee concedes, that the increase in. the TTD benefits from July 1, 2013, mandated by the trial court was contrary to § 25-5-68(e). Thus, we reverse that portion of the trial court’s .judgment awarding TTD benefits to the extent that that award violated § 25-5-68(e), and we remand the cause, for the recalculation of those benefits in compliance with the Act based upon the average weekly wage at the time of the incident made the basis of the employee’s claim under, the Act.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Thomas, Moore, and Donaldson, JJ., concur.

. Although the employer filed a mandamus petition on January 26, 2016, which would have been outside the presumptively reasonable time for seeking review of the trial court’s September 16, 2015, ruling via a petition for an extraordinary writ, see Ex parte Troutman Sanders, LLP, 866 So.2d 547, 548-50 (Ala.2003) (holding that motions requesting reconsideration of interlocutory orders do not toll the time for seeking review under Rule 21, Ala. R. App. P.), this court concluded that the judgment presented for review was final and ordered that the petition would instead be treated as an appeal. See generally Ex parte Lowe's Home Ctrs., LLC, 209 So.3d 496, 502 (Ala.Civ.App.2016) (holding that, "if a trial court enters a judgment finding that an injury is compensable, ordering payment for medical treatment, and awarding temporary-total-disability benefits, regardless of whether the amount of those benefits is specified in the judgment, this court will treat such a judgment as final for purposes of appeal”). Because the trial court’s ruling was a final judgment, the employer’s September 30, 2015, motion to alter, amend, or vacate that judgment tolled the time for seeking appellate review until it was denied by operation of law *1188 on December 29, 2015 (see Rule 59.1, Ala. R. App. P., and Rule 4(a)(3), Ala. R. App. P.); thus, the employer’s mandamus petition, which we treat as a notice of appeal, timely invoked this court’s appellate jurisdiction (see Rule 4(a)(2), Ala. R. App. P.). We have amended the style to reflect that we are treating this matter as an appeal.

. The employer does concede that TTD payments are payable from December 13, 2013, to the terminal date specified by the trial court because of the employee’s recovery from his left-arm surgery.